Filed 10/18/21  In re S.S. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| In re S.S. et al., Persons Coming Under the Juvenile Court Law. | C093504 |
| YUBA COUNTY HEALTH AND HUMAN SERVICES DEPARTMENT,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>C.V.,<br><br>Defendant and Appellant. | (Super. Ct. Nos. JVSQ1900083, JVSQ1900084) |

Appellant C.V., mother of the minors, appeals from the juvenile court's orders terminating parental rights.  (Welf. & Inst. Code, §§ 366.26, 395.)[1]  Mother contends (1) the matter must be remanded for further compliance and findings in accordance with the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.), and (2) reversal and a

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

new hearing is required because she did not receive proper notice of the section 366.26 hearing. Respondent Yuba County Health and Human Services Department (Yuba Department) filed a letter in response stating it acknowledges further ICWA inquiry and notice is required and that a limited remand for ICWA compliance is appropriate.

We disagree with mother that a noticing error requires a new section 366.26 hearing. But we agree with the parties that the matter must be conditionally reversed and remanded for further ICWA compliance.

BACKGROUND

We limit our recitation of the background to those facts relevant to ICWA inquiry and noticing requirements and add additional facts in our discussion of the issues as necessary.

On May 6, 2019, Butte County Department of Employment and Social Services (Butte Department) filed a section 300 petition on behalf of then three-year-old D.S. and then 23-month-old S.S., based on mother's failure to provide adequate shelter and having left the minors without care upon her arrest for possession of controlled substances and paraphernalia. (§ 300, subds. (b)(1) & (g).) The minors had been detained from mother on May 2, 2019, and their alleged father was in custody in Alaska. They had been previously removed from mother's custody in connection with an earlier dependency case. D.S. had been removed from mother's custody in September 2016 and S.S. had been removed in June 2017, and they had been returned to mother on June 28, 2018 -- only a year before these proceedings were instituted.

Mother was present and was appointed counsel at the May 2019 detention hearing. Mother reported that "[her] family is Native American, registered. A federally recognized tribe, my sister and my brothers." She indicated they had provided enrollment information to the social worker. She further reported her ancestry was through the Karuk tribe and the Shasta Nation. Her Native American ancestry was from her paternal family and she provided her father's name and stated he would be attending

2

the next hearing. She also provided the names of her adult siblings and of her father's adult siblings. She further reported that she believed the minors' father had Native American Ancestry through the Choctaw tribe, noting he was not registered but had been working on getting registered in the past. Mother's maternal cousin was also present at the hearing. The juvenile court found there was reason to believe the minors may be Indian children and ordered notice pursuant to law.

Mother's parental notification of Indian status form and Indian ancestry questionnaire, filed May 20, 2019, reflected that mother claimed ancestry through the Cherokee, Shasta Nation, Greenville Rancheria, Karuk, and Cook Inlet Tribal Council -- CITC. The maternal aunt was reported to have roll numbers with the Karuk tribe and the Shasta tribe. An Indian ancestry questionnaire completed by a paralegal on behalf of the father with information from the paternal uncle was also filed regarding father's Cherokee heritage.

Butte Department sent ICWA notice of the jurisdiction hearing to 20 tribes. The notice stated that the maternal aunt had been interviewed for the information on mother's side, and father and paternal uncle were both interviewed for the information on father's side. The notice did not include any information relating to the minors' great-grandparents on either side.

The juvenile court took jurisdiction over the minors in June 2019. Butte Department filed the responses from three of the noticed tribes -- each had indicated the minors were not Indian children. The dependency matter was transferred to Yuba County where mother was residing.

Yuba Department sent ICWA notice of the disposition hearing on July 11, 2019. Two tribes responded the minors were not Indian children. An amended petition was filed, setting forth further allegations of unsanitary living conditions, mother's substance abuse, and prior child protective services history. The court continued disposition to October 24, 2019. Mother did not appear at the October 24, 2019 disposition hearing.

3

The juvenile court adjudged the minors dependents, ordered them removed from parental custody and provided mother with reunification services.[2]

On April 3, 2020, a status review report was filed recommending termination of reunification services and setting a section 366.26 hearing. Mother was present at the April 8, 2020 hearing. The court continued the hearing because mother had not had adequate time to review the report. On April 22, 2020, the juvenile court ordered mother's visitation suspended pending the next hearing and set the matter for a contested six-month review hearing on May 14, 2020.

Mother did not attend the contested hearing. The juvenile court terminated reunification services and set a section 366.26 hearing for September 10, 2020. Mother's visits were terminated. The court sent mother her writ advisements.

Mother was provided notice of the September 10, 2020 hearing by certified mail. At the Yuba Department's request, the hearing was continued to November 4, 2020. On October 21, 2020, the social worker requested a continuance of the section 366.26 hearing to January 6, 2021. The juvenile court granted that request, ordered the section 366.26 hearing for January 6, 2021, and confirmed November 4, 2020, for a status review. Additional ICWA notices were sent out on October 30, 2020.

Mother was provided notice of the November 4, 2020 status review but did not attend. The court found the minors may be Indian children and that notice had been provided to the tribes. The section 366.26 hearing was confirmed for January 6, 2021.

The section 366.26 hearing took place on January 6, 2021. Yuba Department reported it still had not received responses from eight tribes: the Chickaloon Native Village, Kenaitze Indian tribe, Native Village of Eklutna, Native Village of Salamatoff,

_____

[2] The court subsequently ordered reunification services be provided to father, as well. Father has not appealed and we do not further discuss the facts or procedure as they relate to him.

Jena Band-Choctaw, the Karuk tribe, Greenville Rancheria, and Confederated tribes/Grand Ronde tribe. Mother did not appear at the hearing. Yuba Department had provided mother notice of the hearing via certified mail, return receipt requested, but did not file a return receipt signed by mother. Mother's counsel objected to proceeding based on lack of proper notice to mother. The juvenile court found notice had been provided by law, found the minors adoptable and terminated parental rights.

## DISCUSSION

### I

Mother claims that although she was served with notice of the January 6, 2021 section 366.26 hearing via certified mail, the Yuba Department did not file a returned receipt signed by her, as required to perfect service under section 294. Thus, she contends, the orders entered at the section 366.26 hearing must be reversed due to lack of proper notice. We disagree that reversal is required.

"Unless there is no attempt to serve notice on a parent, in which case the error has been held to be reversible per se [citations], errors in notice do not automatically require reversal but are subject to the harmless beyond a reasonable doubt standard of prejudice. [Citations.]" (*In re J.H.* (2007) 158 Cal.App.4th 174, 183.) Although the failure to obtain a return receipt signed by mother renders the notice deficient under section 294,[3] reversal is not required because the error was harmless.

---

[3] The manner of notice to a parent of the section 366.26 hearing is provided for in section 294, subdivision (f), as follows: "(f) Notice to the parents may be given in any one of the following manners: [¶] (1) If the parent is present at the hearing at which the court schedules a hearing pursuant to Section 366.26, the court shall advise the parent of the date, time, and place of the proceedings, their right to counsel, the nature of the proceedings, and the requirement that at the proceedings the court shall select and implement a plan of adoption, legal guardianship, placement with a fit and willing relative, or another planned permanent living arrangement, as appropriate, for the child. The court shall direct the parent to appear for the proceedings and then direct that the parent be notified thereafter only by first-class mail to the parent's usual place of

5

"[T]he sole purpose of the section 366.26 hearing is to select and implement one of the listed permanent plans." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 304.) The issues before the juvenile court at a section 366.26 hearing are: (1) whether the minor is adoptable; and (2) whether any exceptions to adoption apply. (§ 366.26; *In re Christopher M.* (2003) 113 Cal.App.4th 155, 160.) Mother does not dispute that the minors are adoptable, which is "[t]he primary issue in a section 366.26 hearing." (*In re Angela C.* (2002) 99 Cal.App.4th 389, 395.) Indeed, the minors were placed with caretakers who are committed to adopting them and there were no impediments to adoption. Nor does mother make any colorable assertion that any of the exceptions to adoption may apply in this case. The young minors have spent the majority of their lives removed from mother's custody, visits had not gone well, and visitation had been terminated back in April 2020.

The only alleged prejudice mother asserts is that she "could have addressed the discrepancy in the ICWA notices and requested a finding of whether the ICWA applied to the case." But she asserts the issue on appeal and a limited reversal for further ICWA compliance will be sufficient to address any prejudice.

II

ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency proceedings. (See 25 U.S.C. § 1902; *In re Levi U.* (2000) 78 Cal.App.4th 191, 195-196.)

---

residence or business, or by electronic service pursuant to Section 212.5. [¶] (2) *Certified mail, return receipt requested, to the parent's last known mailing address. This notice shall be sufficient if the child welfare agency receives a return receipt signed by the parent.* [¶] (3) Personal service to the parent named in the notice. [¶] (4) Delivery to a competent person who is at least 18 years of age at the parent's usual place of residence or business, and thereafter served on the parent named in the notice by first-class mail at the place where the notice was delivered or by electronic service pursuant to Section 212.5." (§ 394, subd. (f), italics added.)

6

A major purpose of ICWA is to protect "Indian children who are members of or are eligible for membership in an Indian tribe." (25 U.S.C. § 1901(3).) ICWA defines "Indian child" as a child who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); see *id.,* 1901(3), 1902; *In re A.W.* (2019) 38 Cal.App.5th 655, 662.) The juvenile court and the other persons and entities charged with inquiry under ICWA have an affirmative and continuing duty, beginning at initial contact, to inquire whether a child who is subject to the proceedings is, or may be, an Indian child. (Cal. Rules of Court, rule 5.481(a); § 224.2, subd. (a).)

Section 224.2, subdivision (e) provides: "If the court, social worker, or probation officer has reason to believe that an Indian child is involved in a proceeding, . . . the court, social worker, or probation officer shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable." Further inquiry "includes, but is not limited to, all of the following: [¶] (A) Interviewing the parents, Indian custodian, and extended family members to gather the information required in paragraph (5) of subdivision (a) of Section 224.3[4] [¶] (B) Contacting the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member, or eligible for membership in, and contacting the tribes and any other person that may reasonably be expected to have information regarding the child's membership status or eligibility[;] [¶] (C) Contacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership,

---

[4] Section 224.3, subdivision (a)(5) requires the name, birth date and birthplace of the Indian child, if known; the name of the Indian tribe; and the names and other identifying information of the Indian child's biological parents, grandparents, and great-grandparents, if known.

7

citizenship status, or eligibility.  Contact with a tribe shall, at a minimum, include telephone, facsimile, or electronic mail contact to each tribe's designated agent for receipt of notices under the federal Indian Child Welfare Act of 1978 (25 U.S.C. [§] 1901 et seq.).  Contact with a tribe shall include sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as  information on the current status of the child and the case." (§ 224.2, subd. (e)(2)(A)-(C).)

"[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings.  First, from the Agency's initial contact with a minor and his [or her] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child.  (§ 224.2, subds. (a), (b).)  Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.*, subd. (e), [original italics].)  Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply.  (See § 224.2, subd. (c) [court is obligated to inquire at the first appearance whether anyone 'knows or has reason to know that the child is an Indian child']; *id.*, subd. (d) [defining circumstances that establish a 'reason to know' a child is an Indian child]; § 224.3 [ICWA notice is required if there is a 'reason to know' a child is an Indian child as defined under § 224.2, subd. (d)].)" (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)

Here, the record establishes, and the juvenile court found, there was reason to believe the minors may be Indian children and, therefore, further inquiry was required.  But, contrary to mother's assertion, there was no reason to *know* the minors are Indian

children.[5]  Providing the name of a tribe does not, in and of itself, provide the court with reason to know.  (§ 224.2, subd. (d).)  Mother now claims she indicated she was a registered Native American with the Shasta Nation and the Karuk tribe, but she does not provide a record citation to support the claim.  Instead, the citations she provides in her brief support only that she claimed her relatives were registered.

Mother further asserts the departments should have used informal communication rather than formal notice to inquire further of the BIA and the tribes.  But under section 224.2, while informal communication is sufficient, nothing in the statute prevents the Agency from communicating with the tribes in a formal manner.

Nevertheless, we agree with the parties that the inquiry was insufficient. When there is reason to believe a minor may be an Indian child, inquiry must include interviewing the parents, Indian custodian, and extended family members to gather the information about tribal affiliations and ancestral identifying information required for formal notice under section 224.3.  (§§ 224.2, subd. (e)(1); 224.3, subd. (a)(5).)

Here, the notice did not include information relating to the minors' great-grandparents.  In addition, dates and places of birth and death were missing.  It does not appear that the departments attempted to contact other relatives who might have ancestry information, such as the maternal grandfather from whom mother stated her Native

---

[5] "Reason to know" exists under any of the following circumstances:  "(1) A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family informs the court that the child is an Indian child;  [¶]  (2) The residence or domicile of the child, the child's parents, or Indian custodian is on a reservation or in an Alaska Native village;  [¶]  (3) Any participant in the proceeding, officer of the court, Indian tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child;  [¶]  (4) The child who is the subject of the proceeding gives the court reason to know [he or she] is an Indian child;  [¶]  (5) The court is informed that the child is or has been a ward of a tribal court; [and] [¶]  (6) The court is informed that either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe."  (§ 224.2, subd. (d).)

American ancestry flowed. The maternal grandfather appears from the record to not only be alive, but have been accessible to the social workers, as he had, at one point, requested placement of the minors. There is also no suggestion in the record that mother's siblings, or the maternal grandfather's siblings, were asked about the missing Native American ancestry information. Father also has siblings that may, or may not, have been contacted for ancestry information.

Although formal notice was not yet required, and the tribes that were contacted did not identify any additional information as necessary for making a membership or eligibility determination, we cannot know if any of the accessible, but unquestioned, relatives would have responded with ancestry information that would have assisted the tribes in determining whether the minors are members or eligible for membership. It is possible the relatives could have provided information about familial tribal enrollment or membership with the identified or another federally recognized tribe.

We conclude the departments should have made additional efforts to contact relatives and that remand is necessary for the Yuba Department to make further inquiry -- including, but not limited to, making further efforts to contact known relatives and, if successful, to provide any appropriate information to the BIA and any relevant tribe.

The juvenile court should also make a finding as to whether ICWA applies in this case prior to terminating parental rights. The record must reflect that the juvenile court considered the issue and decided, either expressly or impliedly, whether ICWA applies. (*In re Jennifer A.* (2002) 103 Cal.App.4th 692, 705; *In re Levi U., supra*, 78 Cal.App.4th at p. 199.)

### DISPOSITION

The orders terminating parental rights are conditionally reversed and the matter is remanded for compliance with the inquiry and notice provisions of ICWA and a finding on whether ICWA applies to these proceedings. If, after further inquiry and notice, the juvenile court concludes that proper inquiry and notice has occurred and the minors are

10

not Indian children, the orders terminating parental rights shall be reinstated. If, after proper notice to the tribes, the juvenile court determines ICWA applies because the minors are Indian children, the juvenile court shall conduct a new section 366.26 hearing and proceed in accordance with ICWA, including considering any petition filed to invalidate prior orders. (25 U.S.C. § 1914; § 224, subd. (e).)


　　　　　　　　　　　　　　　　　　　　　　/S/
　　　　　　　　　　　　　　　　　　　MAURO, Acting P. J.


We concur:


　　　　/S/
MURRAY, J.


　　　　/S/
HOCH, J.